UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANKIT THORAT on Behalf of Himself And All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-03039 |
| BENCHMARK LAKE CONROE, LLC | § § § | |
| Defendant. | § § | |

**UNOPPOSED MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

Plaintiff Ankit Thorat ("Plaintiff"), on behalf of himself and on behalf of all others similarly situated, files this Unopposed Motion for Approval of Fair Labor Standards Act Collective Action Settlement and would respectfully show the Court the following:

## I.   INTRODUCTION

Plaintiff and Defendant have reached a confidential settlement of their pending *bona fide* dispute concerning unpaid wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides compensation for unpaid wages to current and/or former employees who were alleged not to have been paid at the federal minimum wage rate for all hours worked.

Specifically, on August 18, 2023, Plaintiff filed this collective action lawsuit related to his work as a server for Defendant. (Dkt. 1). This lawsuit alleges that Plaintiff and the proposed Collective Action Members were paid at an hourly rate less than the minimum wage when it was unlawful to do so. (*See id.*) Under the FLSA, employers must pay employees the minimum wage—currently set at $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The FLSA contains an exception

which permits employers to pay "tipped employees" less than the minimum wage—$2.13 per hour—when the tipped employees' tips make up the difference to the minimum wage. 29 U.S.C. § 203(m). The employer's discount is called the "tip credit." *Eltorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5 (5th Cir. Mar. 18, 2022) (citing *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015)).

To claim this credit, however, employers must meet several requirements. First, an employer must inform its tipped employees of the use of the tip credit, including (1) the amount of the employee's cash wage, (2) the amount of the tip credit claimed by the employer, (3) that the amount claimed may not exceed the value of the tips actually received, (4) that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and (5) that the tip credit shall not apply to any employee who has not been informed of all of these requirements. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b); *Eltorre*, 2022 U.S. App. LEXIS 7295, at *5.

Second, an employer can only claim the tip credit when an employee performs work that is part of the tipped occupation. *See* 29 C.F.R. § 531.56(e); *Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (11th Cir. 2021). "In some situations an employee is employed in dual jobs," meaning that the employee has two different jobs. *See* 29 C.F.R. § 531.56(e). In that situation, no tip credit can be taken for the employee's hours of employment in the occupation that does not generate tips. *See id*. The current dual jobs regulation states:

> In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, **is a tipped employee only with respect to his employment as a waiter**… **and no tip credit can be taken for his hours of employment in his occupation of maintenance man**.

*Id*. (emphasis added).

After Plaintiff filed this lawsuit, the Parties immediately began discovery. The Parties exchanged written discovery, which included pay records, time records, and Defendant's policies. Plaintiff also completed a 30(b)(6) deposition of Defendant and the Parties exchanged information related to the damages that could be owed. Additionally, on July 26, 2024, Plaintiff filed a Motion for Class Certification under the FLSA. (Dkt. 26).

With the information acquired during discovery, the Parties agreed to mediation. The Parties attended two mediation sessions with Allen Blair, a mediator with extensive experience with wage claims under the FLSA. With the assistant of Mr. Blair, the Parties reached a settlement. In particular, Mr. Blair made a mediator's proposal that both sides accepted.

As part of the settlement, Defendant has agreed, for settlement purposes only, to a collective action on behalf of the following group of workers:

> **All persons who worked for Benchmark Lake Conroe, LLC at the Margaritaville Resort on Lake Conroe, Texas as servers at any time from August 18, 2021 through the date of Court approval of the settlement (in the event the Court approves the settlement).**

For the Court's convenience, Plaintiff incorporates the arguments and evidence presented in the Plaintiff's Motion for Class Certification for additional support for the settlement. (*See* Dkt. 26.) As part of the settlement, each of the Collective Action Members (as defined above) will receive a Notice which explains the material terms of the settlement. Each Collective Action Member will then have 45 days to decide whether to participate in the settlement. If any Collective Action Member chooses to participate, that Collective Action Member will receive a settlement payment in exchange for a limited release. Any Collective Action Member that chooses not to participate in the settlement will have all rights preserved.

The final terms of the settlement are reflected in the Confidential Settlement Agreement and Release of Claims (the "Settlement Agreement"), which is attached hereto as Exhibit 1.[1]

## II.   ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).  However, this case involves claims for unpaid overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.*  Some "[c]ourts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, many courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353.  Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355.  The endorsement of

---

[1] A redacted Settlement Agreement is being submitted to the Court under seal given the confidential nature of the settlement. An unredacted copy of the Settlement Agreement will be filed under seal.

4

a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

Here, the Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case and resolves the claims of the Plaintiff and Collective Action Members.

### A. The terms of the settlement provide fair compensation for the claims raised in the lawsuit.

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and the Collective Action Members. The damages that were calculated were based upon the actual records of time worked by the Plaintiff and Collective Action Members and the records showing the amount paid to each of them. The settlement is also fair and reasonable because the amount of the settlement is greater than the amount of unpaid wages that are owed on the two-year limitations period. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiff proves willfulness – which is a higher standard. Here, the settlement provides for a recovery that is approximately <u>124% of the total amount of alleged unpaid wages on the two-year limitations period and 89% of the total damages on the three year limitations period.</u>

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiff argued that he and the Collective Action Members were not given the required tip credit notice and that they were forced to perform work unrelated to their jobs as servers. Defendant countered that it was not required to provide a written notice,

5

that it did provide information about the tip credit, and that no server performed any improper tasks.

Further, the Parties disagreed as to whether Plaintiff could satisfy his burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiff could recover damages for two (2) years or three (3) years prior to the date on which they joined this lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case. Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties.

### B. The settlement is fair and reasonable in light of the uncertainty of the outcome.

The settlement is fair and reasonable as it provides for a significant recovery given the risks of litigation. The Court could have denied Plaintiff's Motion for Class Certification. The Court could have also sided with Defendant on the merits of the case. In that event, the Plaintiff would not recover anything. Further, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals.

### C. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.

There are approximately 250 Collective Action Members who will be eligible to receive a payment from the settlement. A third party company will be hired to administer and oversee the distribution of the notice to the Collective Action Members and the processing of the settlement payments.

In the event that the Court approves the settlement, each Collective Action Member will receive a notice of the settlement from the settlement administrator, as reflected in Exhibit "A" to

the settlement agreement. The Collective Action Members will then have 45 days to decide whether to participate in the settlement. If the Collective Action Members chose to participate in the settlement, they will receive a payment in exchange for a limited release of wage and hour claims (not a general release). Any Collective Action Member that chooses not to participate in the settlement will preserve all of their rights and this lawsuit will have no effect on any claims they may have. This settlement process is fair and equitable to all Parties and only the individuals who decide to participate in this case will be bound by the release of claims.

As part of the settlement, the Parties have also agreed to a Service Award for Plaintiff Thorat. Otherwise known as a "service payment" or "incentive award," this amount is in addition to his pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Class, the valuable contributions Mr. Thorat made throughout the litigation, particularly in its initial phases, Plaintiff's Counsel submits that the incentive award is reasonable.

### D. The attorney's fees sought are fair and reasonable.

Additionally, the amount sought by Plaintiff's Counsel for attorney's fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers and thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

> **1. Plaintiff's Counsel employed their expertise in the area of wage and hour litigation, to perform significant work that yielded a highly favorable result.**

Each individual that chooses to participate in the settlement will receive a cash payment representing a recovery for his/her alleged claims for damages. As noted earlier, the settlement

provides for monetary relief representing 124% of the total amount of alleged unpaid wages on the two-year limitations period and 89% of the total damages on the three year limitations period. This is a significant recovery given the facts of the case and the relative merits of, and risks related to, Plaintiff's claims and Defendant's possible defenses.

When evaluating a claim for attorney's fees, **a party's success in the litigation is the "most critical" factor.** *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988-89 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for Collective Action Members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under Plaintiff's theory of the case, Plaintiff's Counsel has prevailed in securing compensation for the Plaintiff and Collective Action Members. Under Defendant's theory, Plaintiff would be owed zero.

Attached hereto as Exhibit "2" is the Declaration of Don Foty. (Exhibit "2.") During this case, Plaintiff's Counsel engaged in discovery, took a 30(b)(6) deposition, briefed class certification, reviewed personnel records, time records, and pay records, calculated the potential damages, participated in mediation, and performed other work that resulted in a settlement. (*See id.*) It is important to note that Plaintiff's Counsel will continue to work on this case in the future. Plaintiffs' Counsel will spend time fulfilling their obligations in the settlement, working with the settlement administrator to ensure the smooth administration of the settlement, and responding to inquiries from the Collective Action Members. (*See id.*)

Furthermore, the legal theories involved in this case required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to Plaintiff in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class. For these reasons, Plaintiff's Counsel respectfully requests that the Court approve the settlement.

### 2. Plaintiff's Counsel's contingency fee interest is consistent with those approved by courts in the Fifth Circuit.

Plaintiff's Counsel undertook representation in this case on a contingency fee basis with a 40% interest. A 40% contingency fee interest is regular and customary in Fair Labor Standards Act collective actions such as this case. *See, e.g.*, *Sarabia v. Spitzer Indus., Inc.*, No. Civ. A. 4:17-CV-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) (approving 40% and stating that a 40% fee "is in line with that approved in other FLSA cases."). In fact, courts in the Fifth Circuit regularly approve a 40% contingency fee to the plaintiff's counsel. *See id.*; *see also., Sterling v. Greater Hous. Transp. Co., et al.*, No. Civ. A.: 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Dkt. 150) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action); *Green-Johnson v. Fircroft*, et al., No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA case); *Hamilton v. Enersafe, Inc.*, No. Civ. A. 5:15-CV-965-JKP, 2020 WL 12029225 (W.D. Tex. Feb. 7, 2020) (same); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013) (Doc. 71); (same); *Covey, et al. v. Iron Cactus, et al.;* No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. Aug. 6, 2013) (same); *Sandras v. Expeditors & Prod. Serv. Co.*, No. Civ. A. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) (same); *Venable v. Am. Consulting &*

9

*Testing, Inc.*, No. Civ. A. 6:20-CV-1232 (W.D. La. Feb. 25, 2022) (same); *Ellis v. Baptist Mem'l Healthcare Corp.*, No. Civ. A. 3:18-CV-73-SA-JMV, 2021 WL 1206408 (N.D. Miss. Mar. 30, 2021) (same); *Karim v. Finch Shipping Co.*, Ltd. 233 F. Supp. 2d 807, 811 (E.D. LA 2002) (same).

Contingency fee interests provide a benefit to workers and there is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Given that Plaintiff's Counsel undertook the representation on a purely contingent basis, Plaintiff's Counsel has borne all of the risk of loss, including the prospect of later dispositive motions or unfavorable outcomes at trial or on appeal, and that the investment of substantial attorney time and resources towards the case would be lost. *See, e.g.*, *Herrod v. Kijakazi*, No. 4:20-CV-73-DAS, 2023 U.S. Dist. LEXIS 162254, *3 (N.D. Miss. Sept. 13, 2023) ("The fact of a contingency agreement warrants an enhanced fee."). Indeed, "[t]here is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011); *see also Hermes Health All., LLC v. Certain Underwriters at Lloyd's*, No. 20-1654, 2022 U.S. Dist. LEXIS 71320, *10 (E.D. La. Apr. 18, 2022) (contingency fee contract "promotes access to needed legal services for those without means to afford the risk of financial loss").

Further, had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success or compensation. At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiff's Counsel was at great risk of non-payment despite working on this case for approximately 1.5 years. This risk of non-payment supports the amount requested here.

Finally, the attorney's fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

### E. The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the settlement agreement voluntarily and knowingly. The Parties agree that the terms of the settlement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 n.10 (E.D. La. Sept. 23, 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement amount, the Parties engaged in negotiations concerning the specific terms of the settlement and the scope of the release. The

11

settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this settlement represents fair value for the claims raised by Plaintiff. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III. CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the settlement agreement voluntarily and knowingly. The Parties agree that the terms of the settlement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

Respectfully submitted,

*/s/ Don J. Foty*
Don J. Foty
Hodges & Foty, LLP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone: 713.523.0001
Facsimile: 713.523.1116
Email: dfoty@hftrialfirm.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on February 7, 2025 which will forward a copy to Defendant.

                                                */s/ Don J. Foty*_____
                                                Don J. Foty

**CERTIFICATE OF CONFERENCE**

      I certify that I have conferred with Counsel for Defendant and Defendant is unopposed to the relief sought in this Motion.

                                                */s/ Don J. Foty*_____
                                                Don J. Foty